[No. 12179.   Department One.   January 8, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v. W. C. WILSON, *Appellant*.[1]

PERJURY—ELEMENTS OF OFFENSE — DEGREES — STATUTORY DEFINITIONS. "Perjury in the second degree" as defined by Rem. & Bal. Code, § 2353, covering oral or written false swearing concerning any matter whatsoever whether as a volunteer or in a proceeding or investigation authorized by law, is not included within, and conviction thereof cannot be had under, a charge of perjury under Id., § 2351, defining perjury in the "first degree" as knowingly testifying falsely concerning material matters in any action, proceeding . . . or investigation in which an oath may be lawfully administered (covering the crime of willful and corrupt perjury at common law as an "obstruction of justice"), in which there can be no shades or degrees of the offense.

SAME—DEFENSES—MATERIALITY OF FALSE TESTIMONY. Rem. & Bal. Code, § 2352, providing that it shall be no defense for "perjury in the first degree" (common law perjury, as to material matters under Id., § 2351) that the defendant did not know the materiality of his false statement if it was indeed material and might have affected such proceeding, does not contemplate that, if the testimony be material to the issue, the offense would be perjury in the first degree, and, if not material, "perjury in the second degree" (false swearing concerning any matter whatsoever, under Id., § 2353).

[1]Reported in 145 Pac. 455.

SAME—EVIDENCE—ADMISSIBILITY. In a prosecution for perjury, where the state has introduced evidence tending to show that defendant had made defamatory statements in a spirit of malice toward the prosecuting witness, defendant is entitled to introduce evidence denying or explaining away the alleged statements.

SAME—INSTRUCTIONS. Where the court, in a prosecution for perjury, has instructed the jury that every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he knows to be false, qualifying it by further instructing that, in order to find the defendant guilty, they must find that he willfully gave the testimony knowing the same to be false and untrue, that intent is the basis of every moral action, and that the words "knowingly and willfully" mean with a criminal intent, it was not error to refuse a requested instruction covering honest belief, reasonable ground for believing his testimony to be true, evident forgetfulness, and lack of intent to willfully testify falsely.

Appeal from a judgment of the superior court for Okanogan county, Claypool, J., entered February 2, 1914, upon a trial and conviction of "perjury in the second degree." Reversed.

*William C. Brown*, for appellant.

*J. W. Faulkner, Chas. A. Johnson*, and *Neal & Neal*, for respondent.

CHADWICK, J.—Appellant is charged by information with the crime of perjury in the first degree. A further statement of the charge is unnecessary to the determination of the case in this court. After a trial, appellant was convicted of the crime of perjury in the second degree. A judgment upon the verdict was rendered and defendant was sentenced to imprisonment in the state penitentiary for a term of not less than six months nor more than two years.

Numerous errors are assigned, but few of them will require discussion in this court.

The court instructed the jury that an information charging perjury in the first degree includes the lesser crime of perjury in the second degree, and if the jury found to their satisfaction and beyond a reasonable doubt that all of the essential

elements of the crime charged had been proven, except the
materiality of the testimony charged to have been falsely
given, the defendant would be guilty of the crime of perjury
in the second degree, and that it should find accordingly.

At common law, the crime of "willful and corrupt perjury"
is defined by Sir Edward Coke to be, "a crime committed when
a lawful oath is administered in some judicial proceeding to
a person who swears willfully, absolutely and falsely in a
matter material to the issue or point in question." 4 Black.
Com. 137, 3 Inst. 164.

"Perjury by the common law seemeth to be a wilful false
oath by one who, being lawfully required to depose the truth
in any proceeding in a court of justice, swears absolutely in
a matter of some consequence to the point in question, whether
he be believed or not." Bac. Ab. Tit. Perjury.

See, also, 1 Russell, Crimes (Int. ed.), p. 293.

"Perjury, not speaking of its affinities, is the wilful giving
under oath, in a judicial proceeding or other course of justice,
of false testimony material to the issue or point of inquiry."
1 Bishop, New Criminal Law, § 468 (4).

False swearing in any proceeding other than in a court of
justice was not taken account of as a crime at common law.
Perjury, however, was noticed and punished solely upon the
theory that a false oath was "an obstruction of justice."

At common law, the false oath "must be taken either in a
judicial proceeding of the like nature, wherein the King's
honour or interest are concerned." 1 Russell, Crimes (Int.
ed.), 294.

"The law takes no notice of any perjury but such as is
committed in some court of justice having power to ad-
minister an oath; or before some magistrate or proper officer
invested with a similar authority, in some proceedings relative
to a civil suit or a criminal prosecution; for it esteems all
other oaths unnecessary, at least, and therefore will not pun-
ish the breach of them." 4 Blackstone, Commentaries, p. 137.

"In the case of perjury, I take the circumstances requisite
to be these; *the oath must be taken in a judicial proceeding,*

*before a competent jurisdiction; and it must be material to the question depending.*" Lord Mansfield in *Rex v. Aylett,* 1 Term Rep. 63.

Our legislature has defined perjury:

"Every person who, in any action, proceeding, hearing, inquiry or investigation, in which an oath may lawfully be administered, shall swear that he will testify, declare, depose or certify truly, or that any testimony, declaration, deposition, certificate, affidavit, or other writing by him subscribed is true, and who in such action, proceeding, hearing, inquiry or investigation shall state or subscribe as true any material matter which he knows to be false, shall be guilty of perjury in the first degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years." Rem. & Bal. Code, § 2351 (P. C. 135 § 197).

This statute is clearly no broader than was the common law, and must, when considered in the light of other statutes, be held to apply in all cases where the alleged false oath is taken and testimony is given in or in aid of a judicial proceeding. Courts and legislatures have recognized that perjury, as defined at common law and by statute, is not only complete within itself, but is exclusive of other offenses against the truth. Consequently the legislature of this state and of other states have passed many special statutes and many general statutes making certain offenses perjury that would not be so either under the common law or under the statute, for crimes are not to be created by construction. If there be a reasonable doubt as to the law, justice demands that it be resolved in favor of innocence of the party charged. *State ex rel. Dorrien v. Hazeltine,* 82 Wash. 81, 143 Pac. 436; *State v. Furth,* 82 Wash. 665, 144 Pac. 907.

An evidence of the legislative intent to reflect this principle in its work may be found in statutes making the following offenses perjury; any wilful, false swearing in any bank examination (§ 3300); the taking of a false oath when registering for voting in a school district of the first class (§ 4702); false statements by candidates at primary elec-

tions (§ 4835) ; the swearing in of an illegal vote at an election (§ 4838) ; a false sworn statement under the sales in bulk law (§ 5298) ; a false oath in procuring marriage licenses (§§ 7164, 7165) ; a false oath to support the registration of a land title under the Torrens act (§ 8898) ; a false listing of property for taxation (§ 9130). These offenses, in the absence of a special statute, would not be punishable under § 2351.

Section 2351 was passed in 1909. At the same time and as a part of the same act, the legislature passed a general statute, which, as counsel states, and so far as we know, is unknown to the law of any other state. It is an original conception so far as the law of this state is concerned.

"Every person who, whether orally or in writing, and whether as a volunteer or in a proceeding or investigation authorized by law, shall knowingly swear falsely concerning any matter whatsoever, shall be guilty of perjury in the second degree and shall be punished by imprisonment in the state penitentiary for not more than five years, or by imprisonment in the county jail for not more than one year." Rem. & Bal. Code, § 2353 (P. C. 135 § 201).

Section 2351 defines a felony. Under § 2353, one may be punished as for a felony or a misdemeanor, as the trial judge may determine.

It is the contention of the state that, in so far as perjury may be committed, "in a proceeding or investigation authorized by law," perjury in the second degree is included in a charge of perjury in the first degree. We cannot assent to this reasoning. If it were so, the legislature has done a vain and useless thing. The adoption of § 2353 would serve no purpose and lead only to irreconcilable conflict and confusion, for if both sections can be made to apply to the same state of facts and cover any and "all proceedings or investigations authorized by law," and these words include a civil "action" (§ 2351) or a proceeding in a court of justice or in furtherance of its jurisdiction and its functions, any convicted

person could contend for a sentence under the misdemeanor clause of § 2353. Thus a false oath taken in a court of justice, which from the earliest times has been held in disfavor and contempt—it was called "willful and corrupt" perjury at common law—and punished by the severest penalties, would be reduced to a misdemeanor if the judge pronouncing the sentence so willed.

We cannot believe that the legislature ever intended such consequences, but rather, by adopting § 2353, it meant to cover those offenses against truth which occur in extra judicial proceedings and investigations and proceedings and investigations held by *quasi* judicial boards, commissions and committees where a false oath could not be held to be perjury under the theory that it operated as an "obstruction of justice" as the stream of justice flows in the courts of the state, or in proceedings ancillary or in aid of the jurisdiction of the courts to try and determine public and private controversies. "Proceedings or investigations authorized by law," must be held to mean proceedings or investigations defined by or held under the warrant of the legislative body as distinguished from an offense recognized as criminal at the common law, which is adopted in so far as it is not inconsistent as an integral part of our criminal code.

It is evident that § 2353 was passed to cover, by general statute, offenses which in some states have been called false swearing and made punishable *eo nomine* by statute. 2 Bishop, New Criminal Law, 1014. No other construction can be given to § 2353, for from the very nature of things there can be no shades or degrees in the crime of perjury when committed in a court of justice. Neither the common law nor the statute makes any distinction between a black lie and a white lie. If either is wilfully false and material to the issue, it is perjury.

If a convicted man is entitled to consideration it may be given him, for the judge has a wide discretion. He may meet and measure any extenuating circumstance or circum-

stances when passing sentence.  But the crime, if committed, is complete when a person takes an oath and wilfully testifies as the truth that which he knows to be false.

The perjury alleged to have been committed in this case occurred in an *action* in which an oath was lawfully administered.  In such cases "every person  .  .  .  shall be guilty of perjury in the first degree" (§ 2351).

Counsel contend that the judgment of the court may be sustained upon the theory that, if the testimony be material to the issue, the offense would fall within § 2351, and if not material, under § 2353.  The answer to this contention is that the statute makes no such distinction.  Counsel have misread § 2352.  That section does not provide that testimony given under the one section if material shall be perjury in the first degree, and if not material to the issue shall be perjury in the second degree.  It says that it shall be no defense for perjury in the first degree that the defendant did not know the materiality of his false statement, if it was indeed material and might have affected such proceeding.  The statute goes not to the materiality of the testimony, but to the mental status of the person giving the testimony.

Nor can the verdict and judgment be sustained upon the theory that perjury in the second degree is a crime included within the definition of perjury in the first degree.  We have already held that there can be no degrees of guilt when the false oath and materiality of the testimony has been established.  The offender is either guilty or he is not guilty.  Furthermore, we have held that lesser crimes are not to be included, nor are compromise verdicts to be invited, unless demanded by the plain provision of a statute, or the facts developed at the trial bring the case within the definition of the lesser crime.  *State v. McPhail,* 39 Wash. 199, 81 Pac. 683; *State v. Kruger,* 60 Wash. 542, 111 Pac. 769; *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449; *State v. Blaine,* 64 Wash. 122, 116 Pac. 660; *State v. Phillips,* 65 Wash. 324, 118 Pac. 43; *State v. Harsted,* 66 Wash. 158, 119 Pac. 24;

*State v. Ash,* 68 Wash. 194, 122 Pac. 995, 39 L. R. A. (N. S.) 611; *State v. Hart,* 79 Wash. 225, 140 Pac. 321.

We shall not make a close argument upon the remaining assignments of error except to say that, in the event of a retrial, if the state introduces evidence tending to show that the defendant had theretofore made defamatory statements in a spirit of malice and ill-will toward the prosecuting witness, the defendant should be given a like opportunity to deny or explain away the alleged statements. 2 Bishop, New Procedure, § 935; 30 Cyc. 1444.

Appellant requested an instruction covering honest belief, reasonable ground for believing his testimony to be true, evident forgetfulness, and lack of intent to wilfully testify falsely. The court, when instructing the jury, told them that "every unqualified statement of that which one does not know to be true, is equivalent to a statement of that which he knows to be false." It is complained that the court did not instruct the jury that this statutory definition should be taken with the qualification that there must be a criminal intent, an absence of honest belief or honest mistake. On the other hand, it is contended that the court covered this objection by instructing the jury that, in order to find the defendant guilty, they must find that he wilfully gave the testimony knowing the same to be false and untrue. The court instructed the jury that intent is the basis of every moral action, and the words knowingly and wilfully mean with a criminal intent. We are not prepared to say that the instruction of the court did not meet the full intendment of the law.

Other assignments of error are made but the matters discussed will not be material or are not likely to occur upon a retrial. For the reasons assigned, the judgment of the lower court is reversed.

Remanded for a new trial.

CROW, C. J., GOSE, MORRIS, and PARKER, JJ., concur.